1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KARA MARET BAYMA,                          No.  2:22-cv-02321 CKD

12                  Plaintiff,

13         v.                                    ORDER

14   MARTIN O'MALLEY, Commissioner of
     Social Security,
15
                     Defendant.
16

17

18         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II

20   of the Social Security Act ("Act").  The parties have consented to Magistrate Judge jurisdiction to

21   conduct all proceedings in the case, including the entry of final judgment.  For the reasons

22   discussed below, the court will deny plaintiff's motion for summary judgment and grant the

23   Commissioner's cross-motion for summary judgment.

24   BACKGROUND

25         Plaintiff, born in 1968, applied on June 26, 2019 for DIB, alleging disability beginning

26   April 1, 2019.  Administrative Transcript ("AT") 29, 323-329.  Plaintiff alleged she was unable to

27   work due to depression, anxiety, degenerative disc disease, spondylitis, slipped disc, obsessive-

28   compulsive disorder, bulimia, substance abuse disorder, dysthymic disorder, and trichomania.

                                                1

AT 131.  In a decision dated March 1, 2021, the ALJ determined that plaintiff was not disabled.[1]

AT 151-170.  Plaintiff requested review by the Appeals Council, which remanded plaintiff's case

for a new hearing, held on June 1, 2022.  AT 39-69, 171-176.  On June 27, 2022, the ALJ issued a

second unfavorable decision, again concluding that plaintiff was not disabled.  AT 15-30.  In the

2022 decision now under review, the ALJ made the following findings (citations to 20 C.F.R.

omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2.  The claimant has not engaged in substantial gainful activity since April 1, 2019, the alleged onset date.

---

[1]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3.   The claimant has the following severe combination of impairments: degenerative disc disease; sacroiliitis; affective disorders; adjustment disorder; anxiety disorder; body dysmorphic disorder; personality disorder; alcohol use disorder; post-traumatic stress disorder; attention deficit disorder; obsessive compulsive disorder; hypothyroid disorder; trichotillomania.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except she can occasionally climb ramps or stairs, but can never climb ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She is limited to occasional rotation, extension, and flexion of her neck independently of her torso.  She must avoid concentrated exposure to unprotected heights and hazardous machinery.   She can perform simple, routine, repetitive tasks, but not in a fast-paced, production-driven environment.  She can make simple, work-related decisions.  She can tolerate few, if any, changes in the workplace.  She can occasionally interact with coworkers, supervisors, and the public.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born [in] 1968 and was 51 years old, which is defined as an individual closely approaching advanced age on the alleged disability onset date.

8.  The claimant has at least a high-school education.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled' whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]

11.  The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2019 through the date of this decision.

AT 18-30.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following error in finding plaintiff not

---

[2] The ALJ relied on vocational expert (VE) testimony to conclude that plaintiff could work as a housekeeper, mailroom clerk, or merchandise marker.  AT 30.

1    disabled: The ALJ failed to provide legally sufficient reasons for discounting plaintiff's

2    subjective symptom testimony.

3    LEGAL STANDARDS

4           The court reviews the Commissioner's decision to determine whether (1) it is based on

5    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

6    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

7    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

8    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

9    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

10   Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

11   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

13   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

14   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15          The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

16   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

17   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

18   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

19   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

20   administrative findings, or if there is conflicting evidence supporting a finding of either disability

21   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

22   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

23   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

24   ANALYSIS

25          The ALJ found that plaintiff's "statements concerning the intensity, persistence and

26   limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other

27   evidence in the record for the reasons explained in this decision."  AT 23.  The ALJ proceeded to

28   discuss the evidence relating to both physical and mental limitations, comparing it to plaintiff's

allegations.  AT 24-26.  Plaintiff claims that the reasons the ALJ gave for discounting both her physical and mental allegations, insofar as these were not reflected in the assessed residual functional capacity (RFC), were not "clear and convincing."  Specifically, plaintiff argues that the ALJ should have credited her testimony that she was unable to perform full-time work.  ECF No. 16 at 10.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  When discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).  This standard does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony[.]" Lambert, 980 F.3d at 1277.  However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for

1  assessing credibility.  Id. at 1277–78.

2        At the first step of the required credibility analysis, the ALJ found objective evidence of

3  medical impairment, finding several mental and physical impairments to be severe.  As to

4  physical impairments, specifically spine-related conditions, the ALJ found plaintiff's testimony

5  that these impairments were disabling inconsistent with her "generally mild" clinical findings and

6  her response to "conservative treatment" consisting of physical therapy.  AT 23-24; see, e.g., AT

7  646-647 (March 2019 treatment note that, per plaintiff, "her [low back and neck] pain always

8  responded to physical therapy").  Similarly, the ALJ found that plaintiff's claims of disabling

9  mental symptoms were inconsistent with her "mild abnormal findings" and "unremarkable"

10  mental status examinations, as reflected "throughout the record."  AT 24.  The ALJ cited a May

11  2021 note by plaintiff's treating psychiatrist that, on examination, she had "no apparent serious

12  mental status abnormalities," though she was diagnosed with Major Depressive Disorder and

13  other mental health conditions.  AT 1301-1302.

14        The ALJ further found that plaintiff made prior inconsistent statements about "the severity

15  and limiting effects of her symptoms," writing:

16          Despite alleging disability based on a number of conditions, the
             claimant has continued to work, on a part-time basis, as a public
17          health nurse since her alleged onset date.  Such activity demonstrates
             her ability to perform work-related functions in a job that is
18          characterized as skilled by a vocational expert.

19   AT 25; see also AT 20 ("[D]espite the claimant's claims of extreme anxiety, she reportedly was

20  working in a public contact position as a public health nurse throughout the period at issue"),

21  citing AT 383.  The ALJ also found plaintiff's alleged inability to work inconsistent with her

22  stated plans to join a gym, do more hiking, return to work (though with a shorter workday), and

23  travel to Australia, during the alleged period of disability.  AT 25-26.  The ALJ found further

24  inconsistencies between plaintiff's hearing testimony and her statements at other stages of the

25  disability proceedings.  AT 26.

26        Finally, the ALJ found plaintiff's reported daily activities inconsistent with the level of

27  disability she claimed.  The ALJ cited "activities . . . requiring sustained attention and

28  concentration, including driving, shopping, and managing finances," along with "work[ing]

throughout the relevant period as a public health nurse." AT 20-21.

Thus, while the ALJ included both mental and physical limitations in the RFC, he did not find plaintiff to be precluded from work, as she alleged.  Because the ALJ used the proper process and provided proper reasons, the undersigned defers to his discretion in the credibility determination.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  January 30, 2024

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/bayma2321.dib.ckd

7